# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ROY SHOWMAN,**                                      **Case No. 1:23-cv-00986**

                    **Plaintiff,**

          **-vs-**                                   **JUDGE PAMELA A. BARKER**

**Q CORPORATE HOLDINGS, LLC, et al.,**

                    **Defendants.**        **MEMORANDUM OPINION & ORDER**

Before the Court are three motions to dismiss.  First is Defendant Q Corporate Holdings, LLC's ("Q Corp.") Motion to Dismiss Plaintiff Roy Showman's ("Showman") first, third, fourth, and fifth causes of action for failure to state a claim filed on September 5, 2023.  (Doc. No. 21.)  On October 23, 2023, Showman filed an Opposition to Q Corp.'s Motion to Dismiss (Doc. No. 27), to which Q Corp. filed a Reply on November 13, 2023.  (Doc. No. 31.)

Second is Defendant 3i Group PLC's ("3i Group") Motion to Dismiss for lack of jurisdiction filed on September 5, 2023.  (Doc. No. 22.)  On October 23, 2023, Showman filed a Response to 3i Group's Motion to Dismiss (Doc. No. 29), to which 3i Group filed a Reply on November 13, 2023. (Doc. No. 32.)

Last is Defendant 3i Corporation's ("3i Corp.") Motion to Dismiss all causes of action against it for failure to state a claim filed on October 5, 2023.  (Doc. No. 24.)  On October 25, 2023, Showman filed an Opposition to 3i Corp.'s Motion to Dismiss (Doc. No. 30), to which 3i Corp. filed a Reply on November 13, 2023.  (Doc. No. 33.)

For the following reasons, the Court GRANTS Q Corp.'s Motion to Dismiss (Doc. No. 21); GRANTS 3i Group's Motion to Dismiss (Doc. No. 22); and GRANTS IN PART and DENIES IN PART 3i Corp.'s Motion to Dismiss.  (Doc. No. 24.)

## I.  Procedural History

On May 15, 2023, Showman filed a Complaint against Q Corp. and 3i Group that alleged five causes of action: (1) breach of contract; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and O.R.C. Chapter 4112; (3) aiding and abetting discrimination; (4) promissory estoppel; and (5) breach of fiduciary duty—minority shareholder oppression.  (Doc. No. 1, ¶¶ 18-60.)  On July 12, 2023, Q Corp. moved to dismiss all but Showman's second cause of action for failure to state a claim, and 3i Group moved to dismiss all five causes of action against it for lack of jurisdiction.  (Doc. Nos. 11, 12.)

In response, on August 2, 2023, Showman filed a First Amended Complaint.  (Doc. No. 16.) This Amended Complaint has the same five causes of action as Showman's original Complaint, but it adds a new defendant: 3i Corp.  (Doc. No. 16, ¶ 4.)  On September 5, 2023, Q Corp. and 3i Group moved to dismiss Showman's Amended Complaint on substantially the same grounds as before. (Doc. Nos. 21, 22.)  Additionally, on October 5, 2023, the new defendant, 3i Corp., moved to dismiss all claims against it for failure to state a claim.  (Doc. No. 24.)

On October 23 and 25, 2023, Showman filed Oppositions to the three Motions to Dismiss. (Doc. Nos. 27, 29, 30.)  And, on November 13, 2023, Q Corp., 3i Group, and 3i Corp. (collectively, "Defendants") filed Replies.  (Doc. Nos. 31, 32, 33.)

## II.    Factual Allegations

Showman sets forth the following factual allegations in his First Amended Complaint.  (Doc. No. 16.)  On or about May 18, 2020, Defendants[1] hired Showman as the Chief Financial Officer of Q Holding Company.  (*Id*. ¶¶ 30, 37.)  Showman was 52 years old at the time.  (*Id*. at ¶¶ 29, 30.)  Before starting his employment, Showman signed an "Employment and Noncompetition Agreement"[2] with Q Holding Company.[3]  (*Id*. at ¶ 31.)  Section 2 of the Employment Agreement provides, in pertinent part, that Showman's employment "commenc[ed] as of the Effective Date," defined as May 18, 2020, for a two-year term that "shall automatically be extended for successive one (1) year periods unless [the employer] gives written notice of non-renewal."  (Doc. No. 16-1, PageID# 275.)  Showman alleges that Defendants promised to employ him for "a four year time frame."  (Doc. No. 16, ¶ 58.)

Section 4(a)(iv) of the Employment Agreement provides that Showman's employment with Q Holding Company "shall terminate . . . upon the earliest to occur of the following:

> the effective date of a notice sent by the Company to the Executive stating that the Company is terminating the Executive's employment (A) **without Cause, which notice can be given by the Company at any time after the Effective Date at the Company's sole discretion, for any reason or for no reason** or (B) upon expiration of the Term or any renewal Term as provided under Section 2 above, including, for the avoidance of doubt, the Company's non-renewal of the Term (in the case of (A) or (B), a "<u>Termination Without Cause</u>")"

---

[1]  Most of Showman's factual allegations lump all Defendants together into a single actor.  Where he does not, the Court will so specify.

[2]  The Employment Agreement is attached as Exhibit A to Showman's Amended Complaint.  (Doc. No. 16-1.)

[3]  According to the Employment Agreement, Q Holding Company is a "United Kingdom corporation."  (*Id*. at PageID# 275.)  Q Holding Company is not one of the named Defendants.

(*Id.* at PageID# 277 (emphasis added).)  On or about August 5, 2022, Defendants "involuntarily terminated [Showman's] employment."  (Doc. No. 16, ¶ 34.)  Showman's termination was "without cause."  (*Id.* at ¶¶ 40, 41.)

Section 5(c) of the Employment Agreement specifies what severance benefits Showman was entitled to receive for his "Termination Without Cause."  These included (i) "Accrued Benefits [generally defined in section 5(e) as unpaid salary and business expenses], plus an amount payable . . . for any accrued but unused vacation;" (ii) "the pro rata portion of any bonus;" (iii) "continued payment of [Showman's salary] . . . for a period of twelve (12) months;" and (iv) reimbursement for Showman's "COBRA payments."  (Doc. No. 16-1, PageID# 277-78.)

Section 5(d), however, provides that "as a condition to the Company's obligations . . . under this Section 5, . . . [Showman] shall execute, and not revoke, a general release of claims within sixty (60) days of such termination."  (*Id.* at PageID# 278.)

In April 2021, Showman "made a cash investment in [Q Corp.]" and, in return, received "shares of [Q Corp.]"  (*Id.* at ¶ 69.)  Showman was also "granted stock options for shares of [Q Corp.]" when he was hired.  (*Id.* at ¶ 70.)  These stock options converted into "stock shares of [Q Corp.]" (*Id.*)  Showman was thus a "minority shareholder of [Q Corp.]"  (*Id.* at ¶ 71.)

Showman alleges that Defendants "failed to pay [him] the compensation and benefits he was owed" under the Employment Agreement upon his termination without cause.  (*Id.* at ¶ 41.)  And, according to Showman, Defendants' failure to pay what they allegedly owed him "excused [him] from performing certain obligations under the Agreement."  (*Id.* at ¶ 42.)  Showman also alleges that Defendants "replaced" or "transferred the responsibilities [of his] position to a person or persons who were under the age of forty (40) and/or substantially younger than [Showman]."  (*Id.* at ¶ 47.)  Finally,

4

Showman alleges that 3i Group and 3i Corp. "compelled [Q Corp.] to transfer ownership of [Showman's] shares of [Q Corp.] back to [Q Corp.] at an artificially low value." (*Id*. at ¶ 75.)

## III.  Law and Analysis

### A.  Q Corp.'s and 3i Corp.'s Motions to Dismiss under Rule 12(b)(6)

Because Q Corp. and 3i Corp. move to dismiss Showman's causes of action under Rule 12(b)(6) for substantially the same reasons, the Court will consider their Motions together.

#### 1.  Rule 12(b)(6) Standard

Under Rule 12(b)(6), the Court accepts Showman's factual allegations as true and construes the Amended Complaint in the light most favorable to him. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## 2. First Cause of Action: Breach of Contract

In his first cause of action, Showman alleges that Defendants breached the Employment Agreement by "fail[ing] to pay [him] the compensation and benefits he was owed."  (Doc. No. 16, ¶ 41.)  Q Corp. argues that the Court should dismiss this cause of action because Showman did not execute a release and he "does not plead any facts to suggest that he performed that contractual prerequisite."  (Doc. No. 21-1, PageID# 476.)  3i Corp. moves for dismissal on this same ground as well as the fact that it "is not a signatory to the Employment Agreement" and thus "is not bound by its terms and owes no contractual obligations to [Showman]."  (Doc. No. 24-1, PageID# 523.)

Showman responds that he has adequately plead that Defendants' "other wrongs" excused him from executing a release under the Employment Agreement.  (Doc. No. 27, PageID# 542-43.) He further argues that Defendants should not "get the benefit of the defense of nonoccurrence of a condition" because they "[were] responsible for the nonoccurrence."  (*Id.* at PageID# 542 (quoting *Great Water Capital Partners, LLC v. Down-Lite Int'l, Inc.*, 2015 Ohio App. LEXIS 4633 at *10

6

(Ohio 1st. Dist. Ct. App. Nov. 18, 2015)).)  However, Showman concedes that the Court should dismiss his breach of contract claim as against 3i Corp. since it did not sign the Employment Agreement.  (Doc. No. 30, PageID# 807.)

As Showman does not oppose dismissal of his first cause of action as against 3i Corp., and indeed, agrees that the Court should dismiss it, the Court dismisses the first cause of action as against 3i Corp.  For the following reasons, the Court also grants Q Corp.'s Motion to Dismiss Showman's first cause of action.

"Under Ohio law[4], the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Asset Mgmt. One LLC v. U.S. Bank Nat'l Ass'n*, 569 F. App'x 438, 441 (6th Cir. 2014) (quoting *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)).

Q Corp. does not dispute that Showman has adequately plead elements one, three, and four. (Doc. No. 21-1, PageID# 476-77.)  It only disputes that Showman has adequately plead element two: performance by Showman.  (*Id.*)

In his Amended Complaint, Showman alleges that he "performed his obligations under the Employment Agreement."  (Doc. No. 16, ¶ 38.)  But he does not allege how he performed his obligations, nor does he ever reference section 5(d)'s requirement that he execute a release to receive the severance benefits provided in the Employment Agreement.  As such, Showman's allegation that he "performed his obligations" is the type of "threadbare recital[] of the elements of a cause of action" that "do[es] not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[4]  Section 15 of the Employment Agreement provides that it "shall be governed by and construed and enforced in accordance with the Laws of the State of Ohio applicable to agreements made and to be performed entirely within such state without regard to principles of conflicts of law."  (Doc. No. 16-1, PageID# 284.)

7

Showman also alleges that Defendants' "refusal to pay" his severance benefits "excused [him] from performing certain obligations under the Agreement."  (Doc. No. 16, ¶ 42.)  Section 5(d) of the Employment Agreement provides, however, that "**as a condition** to the Company's obligations" to pay severance benefits, "the Executive shall execute, and not revoke, a general release of claims." (Doc. No. 16-1, PageID# 278 (emphasis added).)  "A condition precedent is an occurrence that must take place before a contractual obligation becomes effective."  *Polek v. Tillimon*, 2002 Ohio App. LEXIS 873 at *6 (Ohio 6th Dist. Ct. App. Mar. 1, 2002) (citing *Troha v. Troha*, 663 N.E.2d 1319, 1323 (Ohio 2nd Dist. Ct. App. 1995)).  If the condition precedent is not met, then "a party is excused from performing the duty promised under the contract."  *Troha*, 663 N.E.2d at 1323.  Courts look to the parties' intent to determine whether a contractual provision is a condition precedent.  *Transtar Elec. v. A.E.M. Elec. Servs. Corp.*, 16 N.E.3d 645, 651 (Ohio 2014).

Here, the inclusion of the phrase, "as a condition to," reflects the parties' clear intent to create a condition precedent.  *See Moody v. Ohio Rehab. Servs. Comm'n*, 2002 Ohio App. LEXIS 6772 at *5 (Ohio 10th Dist. Ct. App. Dec. 17, 2002).  Thus, Q Corp.'s obligation to pay Showman severance benefits was conditioned on Showman executing (and not revoking) a general release of claims. Showman did not execute a general release, which thereby excused Q Corp.'s obligation to pay him severance benefits.

In his Opposition to Q Corp.'s Motion to Dismiss, Showman asks that the Court infer that it was Defendants' alleged "additional violations of [Showman's] rights, including by failing to fulfill their promissory representations to him (Fourth Cause of Action) and breaching multiple fiduciary duties to [him] (Fifth Cause of Action)" that excused his performance.  (Doc. No. 27, PageID# 542.) It is true that "[n]onperformance of a condition is excused where performance thereof is prevented by

8

the other party." *Dynes Corp. v. Seikel, Koly & Co.*, 654 N.E.2d 991, 1005 (Ohio 8th Dist. Ct. App. 1994); *see also Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 471 (Ohio 2018).  However, this argument fails for the following reasons.

First, Showman does not actually set forth this allegation in his Amended Complaint. Therefore, the Court cannot consider it.  *See, e.g., United States v. MedQuest Assocs.*, 702 F. Supp. 2d 909, 918 n.2 (M.D. Tenn. 2010) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

Second, this allegation is not a reasonable inference to draw from the facts alleged.  *See Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021).  Showman's promissory estoppel claim (his fourth cause of action) alleges that Defendants promised to employ him for four years. There are no facts from which to infer that Defendants' alleged violation of this promise prevented Showman from executing a release.  The same is true of Showman's breach of fiduciary duty claim. It alleges that Defendants undervalued his shares in Q Corp.  It is not reasonable to infer that this low valuation prevented Showman from executing a release.

Because Showman has neither adequately plead that he performed under the Employment Agreement nor alleged facts from which to draw a reasonable inference that Q Corp. prevented his performance, the Court grants Q Corp.'s Motion to Dismiss Showman's first cause of action.

### 3.  Second Cause of Action: Age Discrimination

3i Corp. alone moves to dismiss Showman's second cause of action.  3i Corp. argues that Showman did not file a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"), and that he failed to name 3i Corp. in his charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC").  Therefore, 3i Corp. contends, Showman's age discrimination claim against it should be dismissed as a matter of law.  (Doc. No. 24-1, PageID# 526.)  Showman concedes that he did not name 3i Corp. in his EEOC charge, but he argues that 3i Corp. was on notice that it would be named in this lawsuit for discrimination.  (Doc. No. 30, PageID# 808.)

Before bringing a claim under the ADEA or O.R.C. Chapter 4112 against a party, a complainant must first exhaust his administrative remedies.  *Kindred v. Light*, 2023 U.S. App. LEXIS 4798 at *13 (6th Cir. Feb. 27, 2023) (for claims under the ADEA, citing 29 U.S.C. § 626(d)); *Burch v. Ohio Farmers Ins. Co.*, 211 N.E.3d 202, 208 (Ohio 5th Dist. Ct. App. 2023) (for claims under O.R.C. Chapter 4112, citing O.R.C. § 4412.052(A)); *see also Hensley v. Township*, 2022 U.S. Dist. LEXIS 180370 at *20 (S.D. Ohio Sep. 30, 2022) (noting that prior to April 15, 2021, amendments, Ohio law did not require exhaustion).  For a claim under the ADEA, a complainant does so by filing a charge with the EEOC.  *See, e.g., Kindred*, 2023 U.S. App. LEXIS at *13.  Similarly, for a claim under O.R.C. Chapter 4112, a complainant does so by filing a charge with the OCRC.  O.R.C. § 4112.052(B)(1)[5].

The complainant's EEOC charge must *name* the party "before that party may be sued under [the ADEA] 'unless there is a clear identity of interest between [the unnamed party] and a party named in the EEOC charge.'"  *Zeller v. Canadian Nat'l Ry. Co.*, 666 F. App'x 517, 524 (6th Cir. 2016) (quoting *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987)).  The Sixth Circuit has adopted two tests to determine whether there is a clear identity of interest.  *Lockhart v. Holiday Inn Express Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (citing *Alexander v. Local 496, Laborers' Int'l*

---

[5] Under O.R.C. § 4112.052(B)(2), a complainant may file a civil action without having received a right to sue notice from the OCRC, but only if the complainant (i) filed a charge with the OCRC, (ii) filed a charge with the EEOC, and (iii) received a right to sue notice from the EEOC.

*Union*, 177 F.3d 394, 411 (6th Cir. 1999)).  The first asks whether "the unnamed party possesse[d] sufficient notice of the claim to participate in voluntary conciliation proceedings."  *Id*. (quoting *Alexander*, 177 F.3d at 411).  Under the second,

> courts examine the relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur to determine (1) whether a complainant could have ascertained the role of the unnamed party through reasonable effort at the time of the filing of the EEOC complaint, (2) whether the interests of a named party are so similar to the unnamed party's interests that, for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings, (3) whether the unnamed party's absence resulted in actual prejudice to the interests of the unnamed party, and (4) whether the unnamed party has, in some way, represented to the complainant that its relationship with the complainant is to be through the named party.

*Zeller*, 666 F. App'x at 524-25 (citing *Romain*, 836 F.2d at 245-46).

As an initial matter, Showman alleges in his Amended Complaint that he filed a charge with the EEOC, but he does not allege that he filed one with the OCRC.  (Doc. No. 16, ¶ 8.)  In his Opposition to 3i Corp.'s Motion to Dismiss, he does not argue that he filed a charge with the OCRC, nor does he otherwise address 3i Corp.'s argument that he failed to do so.  Accordingly, the Court dismisses Showman's age discrimination claim under O.R.C. Chapter 4112 as against 3i Corp.[6]  *See, e.g., Bradley v. Jefferson Cty. Pub. Sch.*, 598 F. Supp. 3d 552, 567 (W.D. Ky. 2022) (finding that the plaintiffs abandoned certain discrimination claims by failing to respond to defendant's argument in its motion to dismiss).

As for his ADEA claim, Showman argues that because his EEOC charge was against 3i Group and Q Corp., 3i Corp. "was on notice that Plaintiff was challenging his discriminatory treatment by [Q Corp., 3i Group, and 3i Corp.]"  (Doc. No. 30, PageID# 808.)  Even assuming this is true, "[m]ere

---

[6] Q Corp. does not move to dismiss Showman's O.R.C. Chapter 4112 claim for this reason, so the Court does not reach this issue.

notice of the EEOC investigation . . . is insufficient to satisfy the [first] test." *Szoke v. UPS of Am., Inc.*, 398 F. App'x 145, 154 (6th Cir. 2010) (quoting *Weatherspoon v. N. Oakland Gen. Hosp.*, 2006 U.S. Dist. LEXIS 2803 at *8 (E.D. Mich. Jan. 17, 2006)). 3i Corp. must also have had an opportunity "to participate in voluntary conciliation proceedings." *Lockhart*, 531 F. App'x at 547. Showman also alleges in his Amended Complaint that 3i Corp. is a "wholly-owned United States subsidiary of 3i Group." (Doc. No. 16, ¶ 4.) But "[m]erely showing that [the named and unnamed parties] are parent and subsidiary is not sufficient." *Szoke*, 398 F. App'x at 154 (citing *Knafel v. Pepsi-Cola Bottlers, Inc.*, 899 F.2d 1473, 1481 (6th Cir. 1990)). Under either test, the named and unnamed parties must be "virtual alter egos." *Id.* (citing *Knafel*, 899 F.2d at 1481).)

Even so, failure to exhaust administrative remedies is an affirmative defense. *Lockhart*, 531 F. App'x at 547. A court will only grant a motion to dismiss based on an affirmative defense "if the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Barney v. PNC Bank (In re Estate of Barney)*, 714 F.3d 920, 926 (6th Cir. 2013) (quoting *Marsh v. Genentech*, Inc., 693 F.3d 546, 555 (6th Cir. 2012)). Stated differently, the Court cannot grant 3i Corp.'s Motion to Dismiss Showman's ADEA claim unless Showman's "own allegations contain facts which satisfy the elements of the defense" of administrative exhaustion. *Princeton Excess & Surplus Lines Ins. Co. v. Caraballo*, 2023 U.S. Dist. LEXIS 165854 at *13 (N.D. Ohio Sep. 19, 2023) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). Here, Showman alleges that he filed an EEOC charge, 60 days have passed, and he has otherwise "complied with all jurisdictional prerequisites to the filing of this lawsuit." (Doc. No. 16, ¶¶ 8-10.) Rather than satisfy 3i Corp.'s affirmative defense, Showman's alleged facts negate it. As such, the Court cannot dismiss Showman's ADEA claim against 3i Corp. at this stage. *See Sedoris v. Diversicare Healthcare Servs.*, 2021 U.S. Dist. LEXIS

30262 at *12 (W.D. Ky. Feb. 18, 2021) (denying a motion to dismiss an age discrimination claim for failure to exhaust administrative remedies on the same grounds).  Accordingly, the Court denies 3i Corp.'s Motion to Dismiss Showman's ADEA claim against it.

### 4.  Third Cause of Action: Aiding and Abetting Discrimination

In his third cause of action, Showman alleges that the Defendants "aided [and] abetted . . . each other's unlawful discriminatory and retaliatory acts towards [him]."  (Doc. No. 16, ¶ 54.)  Q Corp. and 3i Corp. both move to dismiss this claim for three reasons.  First, Showman's conclusory allegations "make it virtually impossible to decipher the factual basis, if any, for this claim."  (Doc. No. 21-1, PageID# 479; Doc. No. 24-1, PageID# 527.)  Second, "vaguely lump[ing] all defendants together . . . fails to satisfy the *Iqbal/Twombly* standard."  (Doc. No. 21-1, PageID# 480; Doc. No. 24-1, PageID# 527 (both quoting *Hall v. Madison Police Dep't*, 2018 U.S. Dist. LEXIS 188230 at *2 (N.D. Ohio Oct. 31, 2018)).)  And third, an employer "cannot aid and abet its own alleged discrimination."  (*Id.*)

Showman responds that his Amended Complaint is sufficient because the "conduct" the Defendants aided and abetted is alleged in his second cause of action for age discrimination.  (Doc. No. 27, PageID# 543; Doc. No. 30, PageID# 809.)  He further argues that his Amended Complaint alleges that Q Corp. and 3i Corp. "aided and abetted the conduct of *other* Defendants, not its own."  (*Id.*)

The Court will begin and end with Q Corp.'s and 3i Corp.'s third argument that an employer cannot aid and abet its own discrimination.  The Court reiterates that Showman cannot amend his Amended Complaint in his brief in opposition.  *See, e.g., Tangas v. Int'l House of Pancakes LLC*, 2016 U.S. Dist. LEXIS 18507 at *10 (N.D. Ohio Feb. 16, 2016) ("[I]t is hornbook law that a plaintiff

cannot amend a complaint through arguments in an opposition brief.").  Moreover, the Court must accept Showman's factual allegations "as true."  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).

Showman alleges that the Defendants—collectively—"employed [him] from around May 18, 2020, until or around August 5, 2022."  (Doc. No. 16, ¶ 30.)  And he alleges that the Defendants "involuntarily terminated [his] employment."  (*Id*. at ¶ 34.)  He further alleges that the Defendants "discriminated against [him] on the basis of age." (*Id*. at ¶ 48.)  Finally, he alleges that the Defendants "aided, abetted, incited, [etc.] . . . each other's unlawful discriminatory and retaliatory acts towards [him]."  (*Id*. at ¶ 54.)  The Court must therefore accept as true that *all* Defendants collectively employed Showman, fired Showman, discriminated against Showman, and, lastly, aided and abetted in Showman's discrimination.

"[A] corporate entity cannot aid and abet itself in employment discrimination."  *Oster v. Huntington Bancshares Inc.*, 2017 U.S. Dist. LEXIS 76651 at *68 (S.D. Ohio May 19, 2017) (citing *Sampson v. Sisters of Mercy of Willard*, 2015 U.S. Dist. LEXIS 84108 at *24 (N.D. Ohio June 29, 2015)).  Since Showman treats Defendants as a collective whole in his Amended Complaint, so must the Court.  According to Showman's Amended Complaint, all Defendants discriminated against him through the same conduct.  Showman's lumping of all Defendants together is problematic because the Court cannot attribute specific acts to individual Defendants.  *See, e.g., Hall*, 2018 U.S. Dist. LEXIS 188230 at *3.  As such, if the Court accepts as true Showman's allegation that the Defendants collectively discriminated against him through the same actions, then all Defendants necessarily aided abetted themselves in those same discriminatory actions.  Accordingly, Defendants cannot be liable as a matter of law for aiding and abetting themselves in their own discrimination.  Therefore, the Court grants Q Corp.'s and 3i Corp.'s Motions to Dismiss Showman's third cause of action.

14

###### 5.    **Fourth Cause of Action: Promissory Estoppel**

Showman's fourth cause of action is based on Defendants' alleged promise that Showman "would remain employed through the time of the sale of multiple Q [Corp.] business entities within a four year time frame." (Doc. No. 16, ¶ 58.) Q Corp. and 3i Corp. move to dismiss this cause of action because Showman's allegations are conclusory, contradict the Employment Agreement, and Showman cannot establish that he reasonably relied on the alleged promise. (Doc. No. 21-1, PageID# 481-83; Doc. No. 24-1, PageID# 528-29.) Showman responds that his pleading is sufficient and that Q Corp.'s and 3i Corp.'s other two arguments require "resolution of factual disputes not appropriate at the pleading stage." (Doc. No. 27, PageID# 544; Doc. No. 30, PageID# 809-10.)

Under Ohio law, a promissory estoppel claim requires: "[1] a promise, clear and unambiguous in its terms; [2] reliance [on the promise] by the party to whom the promise is made; [3] that the reliance was reasonable and foreseeable; and [4] that the party claiming estoppel was injured by the reliance." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (quoting *Rigby v. Fallsway Equip. Co.*, 779 N.E.2d 1056, 1061 (Ohio 9th Dist. Ct. App. 2002)). "[W]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 583 (6th Cir. 2007). In other words, Showman "cannot mount a claim for promissory estoppel that directly contradicts the language of [the Employment Agreement]." *Id*.

Here, Showman alleges that "Defendants' promise to employ Plaintiff for a four-year time frame did not contradict the Employment Agreement." (Doc. No. 16, ¶ 61.) Yet Showman's allegation belies the plain terms of the Employment Agreement. It provides for a two-year term (extendable for one-year periods) that may be terminated "at any time" and "for any reason or no

15

reason." (Doc. No. 16-1, PageID# 275, 277.)  The Court need not accept Showman's "'legal conclusion couched as a factual allegation' . . . as true." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg.*, 579 F.3d at 609).  Because Defendants' alleged promise directly contradicts a term of the Employment Agreement, Showman cannot recover under both his promissory estoppel and breach of contract claims.

Ohio permits parties to plead promissory estoppel in the alternative to breach of contract but only "where there is a dispute as to the existence or enforceability of a contract." *Kendell v. Phx. Home Health Care Servs.*, 2016 U.S. Dist. LEXIS 139831 at *6 (S.D. Ohio Oct. 7, 2016) (quoting *Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, 2006 U.S. Dist. LEXIS 100943 at *20 (N.D. Ohio Aug. 17, 2006)).  That is not the case here.  Neither party disputes that the Employment Agreement exists and is enforceable.  All they dispute is its terms.  Showman also does not argue that his promissory estoppel claim is in the alternative to his breach of contract claim, nor does his Amended Complaint provide a reasonable inference that it is.  *See Gucwa v. Lawley*, 731 F. App'x 408, 416 (6th Cir. 2018) (noting that Rule 8(d)(3) permits pleading in the alternative but affirming the district court's Rule 12(b)(6) dismissal because the plaintiff's inconsistent claim "explicitly incorporate[d] all allegations of the complaint, and the complaint offer[ed] no indication that any of the facts or claims [were] alleged in the alternative.").

Accordingly, the Court grants Q Corp.'s and 3i Corp.'s Motions to Dismiss Showman's fourth cause of action.

6. **Fifth Cause of Action: Breach of Fiduciary Duty—Minority Shareholder Oppression**

Showman's fifth cause of action alleges that 3i Corp. and 3i Group "compelled Q [Corp.] to transfer ownership of Plaintiff's shares [in Q Corp.] back to Q [Corp.] at an artificially low share value."  (Doc. No. 16, ¶ 75.)  Showman asserts that this "artificially low valuation" breached a fiduciary duty that Defendants owed to him.  (*Id.* at ¶ 79.)  Q Corp. and 3i Corp. move to dismiss this cause of action because Showman pleads "no facts regarding what duty *Q Corp./3i Corp.* specifically owed to Plaintiff with respect to [Showman's shares in Q Corp.]"  (Doc. No. 21-1, PageID# 485; Doc. No. 24-1, PageID# 530.)  3i Corp. also argues that Showman fails to plead any facts "demonstrating who at 3i Corp. 'compelled' the transfer of ownership of Plaintiff's shares and how."  (Doc. No. 24-1, PageID# 531.)

Showman responds that he has met his burden and Q Corp.'s and 3i Corp.'s arguments are "factual disputes."  (Doc. No. 27, PageID# 545; Doc. No. 30, PageID# 811.)

To prevail on his breach of fiduciary duty claim under Ohio law, Showman "must demonstrate: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach."  *Wells Fargo Bank, N.A. v. Sessley*, 935 N.E.2d 70, 83 (Ohio 10th Dist. Ct. App. 2010).  Ohio law recognizes that majority shareholders have a fiduciary duty to minority shareholders in close corporations.  *Crosby v. Beam*, 548 N.E.2d 217, 221 (Ohio 1989).  Closely held corporations are those "with a few shareholders and whose corporate shares are not generally traded on a securities market."  *Id*.  Majority shareholders breach their fiduciary duty when they "use their control to deprive minority shareholders of the benefits of their investment."  *Id*.

17

Showman alleges that he was a minority shareholder in Q Corp while 3i Corp and 3i Group were its majority shareholders.[7]  (Doc. No. 16, ¶¶ 71, 72.)  While Showman does not allege that Q. Corp. is a close corporation, it is reasonable to infer from his factual allegations that it is.  Thus, Showman has plead sufficient facts to show that 3i Corp. and 3i Group owed him a fiduciary duty.  Under Ohio law, a majority shareholder of a close corporation may breach its fiduciary duty to a minority shareholder if it fails to cause the corporation to repurchase the minority shareholder's shares on the same terms and conditions offered to the majority shareholder.  *See Estate of Schroer v. Stamco Supply, Inc.*, 482 N.E.2d 975, 981 (Ohio 1st Dist. Ct. App. 1984), *cited in Crosby*, 548 N.E.2d at 220.  Showman alleges that 3i Corp. breached its fiduciary duty to him by compelling Q Corp. to repurchase his shares "at an artificially low share value to maximize its income from its investment in Q Corp." at his expense.  (Doc. No. 16, ¶¶ 75, 76.)  Who at 3i Corp. compelled the transfer of Showman's shares and how it was done are not necessary facts to give 3i Corp. fair notice of Showman's claim.  *See Gunasekera*, 551 F.3d at 466.  Accordingly, Showman has stated a plausible claim for relief against 3i Corp. and 3i Group for breach of fiduciary duty.

The same is not true for Q Corp.  Showman alleges that "Defendants" collectively owed him a fiduciary duty as a minority shareholder.  (Doc. No. 16, ¶ 77.)  This is a bare legal conclusion that the Court need not accept as true.  *See Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).  Showman pleads no facts to show that Q Corp. owed him a fiduciary duty, nor is it likely that he could.  *See Steele v. Mara Enters.*, 2009 Ohio App. LEXIS 4808 at *15 (Ohio 10th Dist. Ct. App.

---

[7]  Throughout his Amended Complaint, Showman refers to 3i Corp. and 3i Group together as "3i."  (Doc. No. 16, ¶ 4.)  Showman's actual allegation is that "3i is the majority shareholder of Q [Corp.]"  (*Id.* at ¶ 72.)

Oct. 29, 2009) ("The majority shareholder, not the corporation, bears the fiduciary obligations."). Accordingly, the Court grants Q Corp.'s Motion to Dismiss this cause of action against it.

### B.    3i Group's Motion to Dismiss under Rules 12(b)(2) and (5) and *Forum Non Conveniens*

3i Group moves to dismiss Showman's Amended Complaint against it for three reasons.  First, it argues that this Court lacks personal jurisdiction over it because it is a United Kingdom public limited company that does not do business in Ohio, did not employ Showman, and did not engage in any conduct related to this lawsuit in Ohio.  (Doc. No. 22-1, PageID# 491-92.)  Second, 3i Group contends that Showman has not properly served it.  (*Id*. at PageID# 492.)  And third, it argues that the doctrine of *forum non conveniens* favors an English forum for adjudicating this dispute.  (*Id*.)

Showman responds that this Court has both general and specific personal jurisdiction over 3i Group, that he properly served it, and that this forum is more convenient for all parties.  (Doc. No. 29, PageID# 556.)

The Court begins with 3i Group's personal jurisdiction argument and concludes, for the following reasons, that this Court lacks personal jurisdiction over 3i Group.

### 1.    Rule 12(b)(2) Standard

Showman bears the burden of proving personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."  *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).  "[T]he decision whether to grant

19

discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006).

When a district court rules on a jurisdictional motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, as is the case here, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.[8] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To defeat such a motion, a plaintiff need only make a prima facie showing of jurisdiction, which can be met by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe*, 89 F.3d at 1262. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id*.

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service under the [forum] state's long arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Showman "must clear both the statutory and the constitutional hurdles, and the Court is free to consider them in either order" *Baker v. Bensalz Prods.*, 480 F. Supp. 3d 792, 801 (S.D. Ohio 2020) (citing *Theunissen*, 935

---

[8] 3i Group attached to its Motion to Dismiss a declaration from Alastair Philip Richardson, 3i Group's "Head of Legal of the Private Equity" division. (Doc. No. 22-1, PageID# 509-10.) Showman attached to his Response his own declaration. (Doc. No. 29-1.) 3i Group attached another declaration from Alastair Philip Richardson in its Reply and three others from Mauricio Arellano, Q Corp.'s former "Chief Executive Officer," Richard Relyea, 3i Corp.'s "Partner, Managing Director," and Nikhil Patel, a 3i Corp. "Partner." (Doc. Nos. 32-1, 32-2, 32-3, 32-4.)

F.2d at 1459); *see also Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa.").

For the following reasons, the Court concludes that personal jurisdiction over 3i Group would not be consistent with due process.[9]

### 2.    General Personal Jurisdiction

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A court can exercise general personal jurisdiction over a foreign corporation "to hear any and all claims against [it] when [its] affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The "paradigm forum" where a corporation is "at home" is its place of incorporation or principal place of business. *Daimler*, 571 U.S. at 137. Both 3i Group's place of incorporation and

---

[9] The Ohio General Assembly amended Ohio's long-arm statute in April 2021 to extend the reach of Ohio's long-arm statute to the limits of the U.S. Constitution. Before the amendment, "Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that '[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.'" *AmaTech Grp. Ltd. v. Fed. Card Servs., LLC*, 2022 U.S. Dist. LEXIS 1655 at *10 (S.D. Ohio Jan. 5, 2022) (quoting O.R.C. § 2307.382). Based on that language, "courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows." *Id*. The amendment, however, revised subsection (C) to read: "In addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." O.R.C. § 2307.382(C). Ohio courts have yet to rule on the effect of this new language, and federal courts have disagreed over its interpretation. *See A.B. Pratt & Co. v. Bridgeport Grp., LLC*, 2023 U.S. Dist. LEXIS 62708 at *24 (N.D. Ohio Apr. 10, 2023) (collecting cases). As the Court concludes that personal jurisdiction would not be consistent with the Due Process Clause, it need not reach this issue.

principal place of business are in England.  (Doc. No. 22-1, PageID# 509.)  Therefore, for this Court to exercise general personal jurisdiction over 3i Group, this must be an "exceptional case" where 3i Group's operations in Ohio are "so substantial and of such a nature as to render the corporation at home" in Ohio.  *Daimler*, 571 U.S. at 139 n.19.

Showman contends that this is such an exceptional case because 3i Group has "a significant financial investment in an Ohio LLC and systemic managerial efforts to make that Ohio investment profitable."  (Doc. No. 29, PageID# 557.)  Specifically, Showman argues that 3i Group "holds 42% of the holding company that owns [Q Corp.]," Showman's Ohio employer, and it realized financial returns through this holding.  (*Id*. at PageID# 556.)  Showman also argues that 3i Group and Q Corp. "share common operational, managerial, and financial control of the business of [Q Corp.]"  (*Id*. at PageID# 557.).  Even accepting these assertions are true, they are insufficient to establish general jurisdiction.

As noted above, for 3i Group to be subject to general jurisdiction in Ohio, it needs to be "so heavily engaged in activity in [Ohio] 'as to render [it] essentially at home'" in Ohio.  *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (2017).  In *BNSF*, the defendant had over 2,000 miles of railroad track and 2,000 employees in Montana, yet the Supreme Court concluded that the defendant's business in Montana did "not suffice to permit the assertion of general jurisdiction over" the plaintiffs' claims.  *Id*.  Likewise in *Daimler*, the defendant had multiple facilities in California, it was the largest supplier of luxury vehicles in California, and its California sales were 2.4% of the sales it made worldwide.  571 U.S. at 123.  Still the Court concluded that the defendant was not "at home in California."  *Id*. at 139.

3i Group's operations in Ohio are less than those of the defendants in both these cases. Therefore, this case is not an "exceptional case" where exercising general jurisdiction over 3i Group in a forum other than its place of incorporation or principal place of business is appropriate.

### 3. Specific Personal Jurisdiction

The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263.

Purposeful availment—the first factor—is "the *sine qua non* for *in personam* jurisdiction." *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381-82 (6th Cir. 1968). It is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

Showman argues that the same contacts he asserted to support general jurisdiction—namely 3i Group's investment in and control of Q Corp., an Ohio corporation—also support specific jurisdiction. (Doc. No. 29, PageID# 558.) 3i Group counters that these contacts are insufficient for specific jurisdiction. (Doc. No. 32, PageID# 830-31.)

The Court construes Showman's argument to be that the Court can exercise personal jurisdiction over 3i Group under the "alter-ego theory of personal jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450-51 (6th Cir. 2012).  This theory "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Id*. (quoting *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)).  Q Corp. is an "Ohio LLC that . . . does business in Ohio." (Doc. No. 16, ¶ 2.) So, if Showman demonstrates that 3i Group is Q Corp.'s alter ego, then Q Corp.'s contacts with Ohio are attributable to 3i Group.  Showman makes both federal and state law claims, so the Court must look to both federal and Ohio law on alter-ego personal jurisdiction.  *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017).

Under federal law, Showman "must demonstrate 'unity of interest and ownership'" between 3i Group and Q Corp. "that goes beyond mere ownership and shared management personnel." *Anwar*, 876 F.3d at 849 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).  Relevant factors include:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

*Id*. Ohio courts consider similar factors such as whether "(1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).

24

For the following reasons, Showman fails to make a prima facie case that 3i Group is Q Corp.'s alter ego.

In his declaration, Showman asserts that Nikhil Patel ("Patel") is a "Partner" and Richard Relyea ("Relyea") is a "Partner, Managing Director" of 3i Group[10] and that these two individuals also "served as the two members of the Q Group Employee Benefit Trust." (Doc. No. 29-1, PageID# 564.) Showman further asserts that they "routinely worked with and discussed strategy, operations, and planning with" Showman and Q Corp. and received "reports on Q [Corp.'s] performance and operations." (*Id.* at PageID# 565.) Showman also declares that "3i [Group] holds 42% of the ordinary shares of Q Holdco Limited" and that 3i Group received proceeds from this investment. (*Id.* at PageID# 564.) Q Holdco Limited is "a private limited company incorporated in England and Wales." (Doc. No. 32-2.) Q Holdco Limited owns Q Intermediate Holdco Limited, which is also "a private limited company incorporated in England and Wales." (*Id.*) Q Intermediate Holdco Limited owns Q Corp. (*Id.*)

These facts, even considered in Showman's favor, do not demonstrate even "ownership and shared management personnel," much less go beyond it. *Anwar*, 876 F.3d at 849. Showman does not allege that Patel and Relyea were corporate officers of Q Corp as well as 3i Group, only that they served as members of the "Q Group Employee Benefit Trust." Nor does Showman allege that 3i Group and Q Corp. had the same address and phone lines, used the same assets, or failed to maintain separate books, tax returns and financial statements. At best, Showman has demonstrated that 3i Group holds a minority share in a company that owns a company that owns Q Corp. This twice-

---

[10] Contrary to this assertion, both Relyea and Patel declare that they work for 3i Corp., not 3i Group. (Doc. Nos. 32-3, 32-4.) Nonetheless, "a court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *CompuServe*, 89 F.3d at 1262. So, the Court will accept Showman's declaration as true.

removed minority ownership interest is insufficient.  *See Nottingham-Spirk Design Assocs. v. HALO Innovations, Inc.*, 603 F. Supp. 3d 561, 568 (N.D. Ohio 2022) ("Simply put, mere ownership of an entity that in turn owns a party in interest does not satisfy the demands of the Constitution.").  The fact that 3i Group received proceeds from its twice-removed minority ownership of Q Corp. does not change this conclusion.  *See Hollon v. HCA Healthcare, Inc.*, 2023 U.S. Dist. LEXIS 85359 at *19 (E.D. Ky. May 16, 2023) ("[F]inancial benefits accruing to a corporate parent from a subsidiary's relationship to the forum state will not support the exercise of jurisdiction over the parent in that forum if the parent does not itself have a constitutionally cognizable contact with that forum state.").  Nor does the fact that Patel and Relyea received reports on Q Corp.'s performance and operations.  *See Matthews v. Kerzner Int'l*, 2011 U.S. Dist. LEXIS 124727 at *11 (N.D. Ohio Oct. 27, 2011) (declining to attribute subsidiary's jurisdictional contacts to parent because, in part, "it is entirely appropriate for directors [and officers] of a parent corporation to serve as directors [and officers] of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998))).

Accordingly, Showman has failed to demonstrate that 3i Group is Q Corp.'s alter ego.  And, as such, Showman has failed to make a prima facie showing that 3i Group purposefully availed itself of the privilege of acting in Ohio.  Because each factor of the Sixth Circuit's specific jurisdiction test "represents an independent requirement, [the] failure to meet any one of the three means that personal jurisdiction may not be invoked."  *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).  Thus, the Court grants 3i Group's Motion to Dismiss for lack of personal jurisdiction.

Since this Court lacks personal jurisdiction over 3i Group, it need not address 3i Group's remaining arguments for dismissal under Rule 12(b)(5) and *forum non conveniens*.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS Q Corp.'s Motion to Dismiss (Doc. No. 21); GRANTS 3i Group's Motion to Dismiss (Doc. No. 22); and GRANTS IN PART and DENIES IN PART 3i Corp.'s Motion to Dismiss.  (Doc. No. 24.)  Accordingly, the remaining Defendants in this case are Q Corp. and 3i Corp.  The remaining causes of action are Showman's second under the ADEA against Q Corp. and 3i Corp., his second under O.R.C. Chapter 4112 against Q Corp., and his fifth for breach of fiduciary duty against 3i Corp.

**IT IS SO ORDERED.**

Dated: January 12, 2024                                 *s/ Pamela A. Barker*
                                                        PAMELA A. BARKER
                                                        UNITED STATES DISTRICT JUDGE