IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROY SHOWMAN,** | **Case No. 1:23-cv-00986** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Q CORPORATE HOLDINGS, LLC, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Before the Court is Defendant 3i Corporation's ("3i Corp.") Motion for Partial Judgment on the Pleadings filed on February 12, 2024. (Doc. No. 38.) On March 11, 2024, Plaintiff Roy Showman ("Showman") filed an Opposition. (Doc. No. 41.) And on March 21, 2024, 3i Corp. filed a Reply in support of its Motion. (Doc. No. 44.)

For the following reasons, the Court GRANTS 3i Corp.'s Motion for Partial Judgment on the Pleadings.

I.   **Relevant Procedural History**

On August 2, 2023, Showman filed a First Amended Complaint against Q Corporate Holdings, LLC ("Q Corp."), 3i Group PLC ("3i Group"), and 3i Corp. that alleged five causes of action: (1) breach of contract; (2) age discrimination; (3) aiding and abetting age discrimination; (4) promissory estoppel; and (5) breach of fiduciary duty—minority shareholder oppression. (Doc. No. 16.)  All three Defendants filed motions to dismiss Showman's Amended Complaint. (Doc. Nos. 21, 22, 24.)

On January 12, 2024, the Court granted Q Corp.'s Motion to Dismiss, granted 3i Group's Motion to Dismiss, and granted in part and denied in part 3i Corp.'s Motion to Dismiss. (Doc. No.

34.)  Showman's age discrimination and breach of fiduciary duty claims remain pending against 3i Corp.  (*Id*. at PageID# 885.)

On January 26, 2024, 3i Corp. filed an Answer to these remaining claims.  (Doc. No. 35.)  It attached to its Answer several documents, including Showman's "Application for C Ordinary Shares" (Doc. No. 35-2); a "Deed of Adherence" for those C shares (Doc. No. 35-3); Showman's "Application for D Ordinary Shares" (Doc. No. 35-8); an "Investment Agreement" and its "Deed[s] of Amendment and Restatement" (Doc. No. 35-11); the "Articles of Association of Q Holdco Limited" (Doc. No. 35-12); and a "Compulsory Transfer Notice" sent to Showman (Doc. No. 35-13).

On February 12, 2024, 3i Corp. filed a Motion for Partial Judgment on the Pleadings on Showman's breach of fiduciary claim.  (Doc. No. 38.)  3i Corp relies on several of the documents it attached to its Answer in its Motion.

On March 11, 2024, Showman filed an Opposition to 3i Corp.'s Motion.  (Doc. No. 41.)  He attached the following documents to his Opposition: (1) a declaration he authored (Doc. No. 41-1); email correspondence (Doc. No. 41-2); slides used for a board meeting (Doc. No. 41-3); and an organizational chart (Doc. No. 41-4).  The emails, slides, and chart are all "exhibits" to Showman's declaration.

Lastly, on March 21, 2024, 3i Corp. filed a Reply in support of its Motion.  (Doc. No. 44.)

**II.    Breach of Fiduciary Duty Allegations in Amended Complaint**

In his Amended Complaint, Showman sets forth the following allegations concerning his breach of fiduciary duty claim.  (Doc. No. 16.)

In May 2020, Showman began working for Q Holding Company as its Chief Financial Officer.  (*Id*. at ¶¶ 30, 37.)  At the time of his hire, Showman "was granted stock options for shares" of Q Corp.

(*Id*. at ¶ 70.)  In April 2021, these stock options "were converted into stock shares" of Q Corp.  (*Id*.)  Also in April 2021, Showman made a cash investment into Q Corp. for which he received shares of Q Corp.  (*Id*. at ¶ 69.)  These transactions made Showman a minority shareholder of Q Corp.  (*Id*. at ¶ 71.)

3i Corp. and 3i Group are, together, the majority shareholders of Q Corp.  (Doc. No. 16, ¶ 72.)  3i Corp. and 3i Group "compelled" Q Corp. to transfer Showman's shares of Q Corp. back to Q Corp. at "an artificially low share value."  (*Id*. at ¶ 75.)  They valued Showman's shares of Q Corp. "at an artificially low share value to maximize [their] income from [their] investment in [Q Corp.] at the expense of [Showman]."  (*Id*. at ¶ 76.)  3i Corp. and 3i Group owed Showman fiduciary duties "to not take actions that operate to the disadvantage of minority shareholders," "to act in good faith in the pricing and transfer of [Showman's] share of [Q. Corp.] back to [Q Corp.]," and "to not engage in self-dealing by using an artificially low valuation to repurchase [Showman's] shares, but using substantially higher valuations for . . . business purposes."  (*Id*. at ¶¶ 77-79.)  Through their above-described conduct, 3i Corp. and 3i Group breached these fiduciary duties they owed to Showman.  (*Id*. at ¶¶ 80-82.)  As a result, Showman suffered injury and sustained damages.  (*Id*. at ¶¶ 83, 84.)

### III. Law and Analysis

#### A. Rule 12(c) Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*,

3

510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

(quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Scope of Pleadings

Before considering the merits of 3i Corp.'s Motion for Partial Judgment on the Pleadings under Rule 12(c), the Court must determine what matters it may properly consider. Federal Rule of Civil Procedure 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), **matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56**. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (emphasis added). Federal Rule of Civil Procedure 7(a) defines a pleading to include both "a complaint" and "an answer to a complaint." Fed. R. Civ. P. 7(a)(1) & (2). And, under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). District courts have defined a written instrument as "a document evidencing legal rights or duties giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *Reguli v. Russ*, 2023 U.S. Dist. LEXIS 167257 at *13 (M.D. Tenn. Aug. 22, 2023) (quoting *Benzon v. Stanley*, 2004 U.S. Dist. LEXIS 2669 at *6 (M.D. Tenn. Jan. 8, 2004)). In addition to matters inside the pleadings, Sixth Circuit case law provides that a court may also consider documents that "[are] referred to in the [plaintiff's] complaint and [are] central to the plaintiff's claim" without converting the Rule 12(c) motion to one for summary judgment. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999).

5

In view of these standards, the Court begins with the documents Showman attached to his Opposition: his declaration and the three exhibits to it. (Doc. Nos. 41-1 to 41-4.) These documents are not pleadings because they are not exhibits to either Showman's Amended Complaint or 3i Corp.'s Answer. Further, Showman does not refer to the documents in his Amended Complaint. Thus, the documents are by definition "matters outside the pleadings" under Rule 12(d). *See, e.g., Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 502 (6th Cir. 2006) (characterizing two affidavits that the plaintiff submitted in response to a Rule 12(c) motion as matters outside the pleadings). If the Court were to consider them, it would have to convert 3i Corp's Motion for Partial Judgment on the Pleadings to one for summary judgment. The Court will not do so. Therefore, the Court expressly excludes the matters Showman attached to his Opposition from its consideration of 3i Corp.'s Motion. *Cf. Max Arnold & Sons*, 452 F.3d at 503 ("This Court has found that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment.").

However, the Court reaches a different conclusion regarding the documents 3i Corp. attached to its Answer and relies on in its Motion for Partial Judgment on the Pleadings. These documents are exhibits to its Answer, so they are "part of the [Answer] for all purposes." Fed. R. Civ. P. 10(c). And the Answer is a "pleading" that a court can consider when ruling on a Rule 12(c) motion without having to convert the motion to one for summary judgment. Fed. R. Civ. P. 7(a)(2) and 12(d). Lastly, the documents fall within the above definition of written instruments. They are legal documents such as applications for shares (Doc. Nos. 35-2, 35-8), a deed (Doc. Nos. 35-3), an investment agreement and its deeds of amendment and restatement (Doc. No. 35-11), articles of incorporation (Doc. No. 35-12), and a shares transfer notice (Doc. No. 35-13). Accordingly, the Court can and will consider

these documents when evaluating 3i Corp.'s Motion without converting the Motion to one for summary judgment. *See Beasley v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 124256 at *9 (M.D. Tenn. Aug. 7, 2017) (considering documents that the defendant attached to its answer in ruling on the defendant's motion for judgment on the pleadings without converting the motion); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("It would seem to follow that if an attachment to an answer is a 'written instrument,' it is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment.").

Further, if one of 3i Corp.'s documents "contradicts the allegations [in Showman's Amended Complaint], the[n] the document trumps the allegations." *Waid v. Earley (In re Flint Water Cases)*, 960 F.3d 303, 329 (6th Cir. 2020). A document contradicts an allegation if it "utterly discredit[s]" it. *Id.* (quoting *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020)). But if a document supports "both parties' version of events," then the Court must "view the facts in the light most favorable to the plaintiff." *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707-08 (6th Cir. 2021).

### C. Breach of Fiduciary Duty

3i Corp. moves for judgment on the pleadings on Showman's breach of fiduciary duty claim for three reasons: first, 3i Corp. has never been a shareholder of Q Corp., so it owed no fiduciary duty to Showman; second, an agreement governed the transfer of Showman's shares, and Ohio law prevents him from "repackaging" that contract claim as a tort claim; and third, a forum selection clause applies to the transfer of Showman's shares, and it gives English courts exclusive jurisdiction over his breach of fiduciary duty claim. (Doc. No. 38-1, PageID# 1271-72, 1273, 1275.)

The Court will consider each argument in turn.

1. **Not a Majority Shareholder**

3i Corp. argues (1) that Showman owned shares in Q Holdco Limited ("Q Holdco"), not Q Corp., and (2) that 3i Corp. was not (and is not) a shareholder of Q Holdco. (*Id*. at PageID# 1271-72.) For the first assertion, 3i Corp. references Showman's Applications for C and D Ordinary Shares. (Doc. Nos. 35-2, 35-8.) In those documents, Showman applied for shares in "the Company," defined as Q Holdco. (*Id*. at PageID# 907.) For the second assertion, 3i Corp. references the Investment Agreement and its February 25, 2022, Deed of Amendment and Restatement. (Doc. No. 35-11.) Those documents list the investors and managers that own shares of Q Holdco. (*Id*. at PageID# 1000, 1046-48.) They identify Showman as a "relevant manager," but nowhere is 3i Corp. identified as a shareholder. (*Id*. at PageID# 1000.) 3i Corp. argues that since 3i Corp. was not a shareholder in Q Holdco, it could not owe a fiduciary duty to Showman, even though he pleads otherwise. (Doc. No. 38-1, PageID# 1272.) Finally, 3i Corp. contends that Q Holdco's Articles of Association (Doc. No. 35-12, PageID# 1159) provide that only investors and shareholders can appoint or remove members of Q Holdco's Board of Directors. (Doc. No. 38-1, PageID# 1273.) And, since 3i Corp. is neither an investor nor a shareholder, it had no control over Q Holdco's Board. (*Id*.)

In his Opposition, Showman relies on his declaration and its exhibits (Doc. Nos. 41-1 through 41-4) and argues that they create "factual disputes" that negate 3i Corp.'s arguments.[1] (Doc. No. 31, PageID# 1287-88.) Specifically, he asserts that his declaration shows that 3i Corp. "exerts majority control over Q Holdco and Q Corp." (*Id*. at PageID# 1289.) And he contends that "3i [Corp.] cannot

---

[1] As the Court concluded above, it cannot and will not consider Showman's declaration and its exhibits in its analysis of 3i Corp.'s Motion for Partial Judgment on the Pleadings.

shield itself from the consequences of its direct control over the Q entities by disclaiming any responsibility and hiding behind the veil of holding companies." (*Id.*)

Showman's breach of fiduciary duty claim requires three elements: "(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach." *Wells Fargo Bank, N.A. v. Sessley*, 935 N.E.2d 70, 83 (Ohio 10th Dist. Ct. App. 2010). To meet the first element, Showman can plead facts that 3i Corp. was a majority shareholder in Q Holdco and thus owed a fiduciary duty to the company's minority shareholders. *See Crosby v. Beam*, 548 N.E.2d 217, 221 (Ohio 1989). In his Amended Complaint, Showman tries to do this in two ways: first, he pleads that 3i Corp. and 3i Group are "the majority shareholder[s] of Q [Corp.]" and, second, he pleads that they control Q Corp.'s Board of Directors. (Doc. No. 16, ¶¶ 72, 73.)

The problem for Showman is that the documents 3i Corp. attached to its Answer "utterly discredit" these allegations. *See In re Flint Water Cases*, 960 F.3d at 329. First and foremost, Showman owned shares in Q Holdco—not Q Corp. (Doc. No. 35-2, PageID# 907; Doc. No. 35-8, PageID# 957.) Second, 3i Corp. was not a shareholder in Q Holdco, much less a majority shareholder. (Doc. No. 35-11, PageID# 1000, 1046-48.) And third, since 3i Corp. was not a shareholder, it had no control over Q Holdco's Board of Directors. (Doc. No. 35-12, PageID# 1159.) Showman's contradictory allegations in his Amended Complaint are thus "implausible," *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021), and the Court need not accept them as true. *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 409 (6th Cir. 2016).

Because Showman has not plausibly plead that 3i Corp. owed him a fiduciary duty, the Court dismisses without prejudice his breach of fiduciary duty claim.

### 2. "Repackaged" Contract Claim

3i Corp. also argues that Showman cannot "repackage" the terms of the agreements governing his shares in Q Holdco as fiduciary obligations. (Doc. No. 38-1, PageID# 1273.) 3i Corp. contends that Showman owned his shares in Q Holdco subject to Q Holdco's Articles of Association. (*Id*. at PageID# 1274.) And those Articles of Association set forth the procedure for the repurchase of Showman's shares. (*Id*.) Thus, 3i Corp. asserts, Ohio law prevents Showman from "dodg[ing] the clear contractual terms" in the Articles of Association "by repackaging them as a breach of fiduciary duty claim. (*Id*.)

Showman does not meaningfully respond to this argument in his Opposition.

Generally, "the existence of a contract action excludes the opportunity to present the same case as a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio 9th Dist. Ct. App. 1996). Showman's breach of fiduciary duty claim "constitutes a tort" under Ohio law. *Crosby v. Beam*, 615 N.E.2d 294, 300 (Ohio 6th Dist. Ct. App. 1992)[2]. The Sixth Circuit has explained that

> a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. The tort liability of parties to a contract arises from the breach of some positive legal duty of good faith imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contractual obligation.

*Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (applying Ohio law).

---

[2] The Court notes that in this case the plaintiff tried arguing that he had alleged a contract claim to benefit from its longer statute of limitations. 615 N.E. at 299. Specifically, he argued that "the controlling shareholders and officers had fiduciary duties imposed by the articles of incorporation and code of regulations" and, therefore, "a contractual relationship existed between the parties." *Id*. The court rejected this argument based on "the facts [the plaintiff] alleged in the complaint . . . [and] the fact that [the plaintiff] himself . . . did not attach copies of the articles of incorporation or code of regulations to the complaint." *Id*. While the court did not explicitly hold that a breach of fiduciary duty claim based on the majority/minority shareholder relationship can exist independent of articles of incorporation, the court's analysis implies as much.

10

Such is the case here. Under Ohio law, the majority shareholders of Q Holdco—whoever they may be—owe a fiduciary duty to Q Holdco's minority shareholders independent of Q Holdco's Articles of Association. Accordingly, the presence of the Articles of Incorporation would not defeat a properly pleaded breach of fiduciary duty claim. *See Mitri v. Rahma*, 2019 U.S. Dist. LEXIS 214192 at *13 (N.D. Ohio Dec. 12, 2019) (Lioi, J.) (rejecting a similar argument). Even so, such a properly pleaded claim would fail for the reasons explained in the next section.

### 3. Forum Selection Clause

3i Corp.'s final argument is that Showman acquired his shares pursuant to an Investment Agreement, which has a forum selection clause. (Doc. No. 38-1, PageID# 1275.) The February 25, 2022, Deed of Amendment and Restatement of the Investment Agreement contains that clause. It provides:

> The Parties irrevocably agree that **the courts of England shall have exclusive jurisdiction** to settle any dispute or claim that arises out of or in connection with this Deed (including a dispute relating to any non-contractual obligation arising out of or in connection with either this Deed or the negotiation of the transaction contemplated by this Deed).

(Doc. No. 35-11, PageID# 999 (emphasis added).) Therefore, 3i Corp. contends, the Court should dismiss Showman's breach of fiduciary duty claim since English courts have exclusive jurisdiction over it. (Doc. No. 44, PageID# 1361.)

Again, Showman does not meaningfully respond to this argument. In fact, he does not even mention the forum selection clause anywhere in his Opposition. By failing to respond, Showman effectively concedes this argument. *See, e.g., Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 660 (S.D. Ohio 2023) (citing *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)). Still, the Court will briefly consider it.

11

Generally, "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Gen. Envtl. Sci. Corp. v. Horsfall*, 1994 U.S. App. LEXIS 13398 at *25 (6th Cir. May 25, 1994) (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993)). Moreover, "[a] forum selection clause in an international agreement should control absent a strong showing that it should be set aside." *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

Showman's claim concerns the compulsory transfer of his shares, not his acquisition of them. (Doc. No. 16, ¶ 75.) Therefore, the forum selection clause in the Deed of Amendment and Restatement—which governs Showman's investment in Q Holdco—would not appear to be the operative clause. But the Buyback Agreement, which governs Q Holdco's purchase of Showman's shares in Q Holdco, contains a near identical forum selection clause. That clause provides:

> The parties hereto irrevocably submit to **the exclusive jurisdiction of the courts of England and Wales** in respect of any claim, dispute or difference arising out of or in connection with this Agreement or any of the documents to be executed pursuant to this Agreement.

(Doc. No. 35-13, PageID# 1245 (emphasis added).)

Showman "bears the burden of showing that the clause should not be enforced." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Showman makes no argument that enforcing the above forum selection clause "would be unreasonable or unjust, or that the clause [is] invalid for such other reasons as fraud or overreaching." *Shell*, 55 F.3d at 1229. Accordingly, absent any argument to the contrary, the Court concludes that even if Showman properly pleaded a breach of fiduciary duty claim, the Buyback Agreement's forum selection clause would require dismissal without prejudice of that claim.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS 3i Corp.'s Motion for Partial Judgment on the Pleadings and dismisses without prejudice Showman's breach of fiduciary duty claim.

**IT IS SO ORDERED.**

Dated: May 9, 2024

    *s/ Pamela A. Barker*
PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE