IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROY SHOWMAN,**  Case No. 1:23-cv-00986

        **Plaintiff,**

    **-vs-**  **JUDGE PAMELA A. BARKER**

**Q CORPORATE HOLDINGS, LLC, et al.,**

        **Defendants.**  **MEMORANDUM OPINION & ORDER**

Before the Court is Plaintiff Roy Showman's ("Showman") Motion for Leave to File a Second Amended Complaint filed on July 8, 2024. (Doc. No. 58.) On July 26, 2024, Defendants Q Corporate Holdings, LLC ("Q Corp.") and 3i Corporation ("3i Corp.") (collectively, "Defendants") filed an Opposition. (Doc. No. 61.) And on August 2, 2024, Showman filed a Reply in support of his Motion. (Doc. No. 62.)

For the following reasons, the Court DENIES Showman's Motion for Leave to File a Second Amended Complaint.

**I.**  **Relevant Procedural History**

On August 2, 2023, Showman filed a First Amended Complaint against Defendants and against 3i Group PLC ("3i Group") that alleged five causes of action: (1) breach of contract; (2) age discrimination; (3) aiding and abetting age discrimination; (4) promissory estoppel; and (5) breach of fiduciary duty—minority shareholder oppression. (Doc. No. 16.) Q Corp. filed an Answer (Doc. No. 20) and a Partial Motion to Dismiss Showman's First Amended Complaint. (Doc. No. 21.) 3i Group and 3i Corp. both filed Motions to Dismiss. (Doc. Nos. 22, 24.)

On January 12, 2024, the Court issued a Memorandum Opinion and Order ("January 2024 Opinion") that granted Q Corp.'s Partial Motion to Dismiss, granted 3i Group's Motion to Dismiss, and granted in part and denied in part 3i Corp.'s Motion to Dismiss. (Doc. No. 34.) With respect to Q Corp., the Court determined that Showman pleaded "no facts to show that Q Corp. owed him a fiduciary duty, nor is it likely that he could." (*Id*. at PageID# 876.) At that point, Showman's remaining causes of action were his age discrimination claim against Defendants and his breach of fiduciary duty claim against 3i Corp. (*Id*. at PageID# 885.)

On January 26, 2024, 3i Corp. filed an Answer to these remaining claims. (Doc. No. 35.) 3i Corp. attached several documents to its Answer, including Showman's "Application for C Ordinary Shares" (Doc. No. 35-2); a "Deed of Adherence" for those C shares (Doc. No. 35-3); Showman's "Application for D Ordinary Shares" (Doc. No. 35-8); an "Investment Agreement" and its "Deed[s] of Amendment and Restatement" (Doc. No. 35-11); the "Articles of Association of Q Holdco Limited" (Doc. No. 35-12); and a "Compulsory Transfer Notice" sent to Showman. (Doc. No. 35-13.) Then on February 12, 2024, it filed a Motion for Partial Judgment on the Pleadings on Showman's breach of fiduciary duty claim ("3i Corp.'s Motion"). (Doc. No. 38.) 3i Corp. relied on several of these documents in its Motion. (*Id*.)

On March 11, 2024, Showman filed an Opposition to 3i Corp.'s Motion. (Doc. No. 41.) He attached the following documents to his Opposition: (1) a "Second Declaration" he authored dated March 11, 2024 (Doc. No. 41-1); (2) email correspondence. (Doc. No. 41-2); (3) slides used for a board meeting (Doc. No. 41-3); and (4) an organizational chart. (Doc. No. 41-4.) The emails, slides, and chart are all "Exhibits" to Showman's Second Declaration. (Doc. Nos. 41-1 – 41-4.)

On May 9, 2024, the Court issued a Memorandum Opinion and Order ("May 2024 Opinion") that granted 3i Corp.'s Motion and dismissed Showman's breach of fiduciary duty claim without prejudice. (Doc. No. 48.) The Court determined that it could properly consider 3i Corp.'s documents without having to convert its Motion to one for summary judgment. (*Id*. at PageID# 1407-08.) However, the Court determined that Showman's documents were matters outside the pleadings under Fed. R. Civ. P. 12(d). (*Id*. at PageID# 1407.) Therefore, the Court expressly excluded the matters Showman attached to his Opposition from its consideration of 3i Corp.'s Motion. (*Id*.)

Relying on documents attached to 3i Corp.'s Answer, the Court reasoned that since Showman owned shares in Q Holdco Limited ("Q Holdco"), not Q Corp., and since 3i Corp. was not a majority shareholder (or a shareholder at all) in Q Holdco, Showman's claim against 3i Corp. for breach of fiduciary duty under a minority shareholder oppression theory was factually implausible. (*Id*. at PageID# 1410.) The Court also concluded that Showman's claim failed because the Stock Buyback Agreement, which allegedly governs Q Holdco's purchase of Showman's shares in Q Holdco that led to the alleged breach of fiduciary duty, had a forum selection clause. (*Id*. at PageID# 1413.) That forum selection clause provides that the courts of England and Wales have exclusive jurisdiction over any claim arising out of the Stock Buyback Agreement. (*Id*.) Showman did not allege or argue that enforcing the forum selection clause would be unreasonable or unjust, so the Court concluded that even a properly pleaded breach of fiduciary duty claim would fail due to the valid forum selection clause. (*Id*.) The May 2024 Opinion left Showman's age discrimination claim against Defendants as the sole remaining cause of action.

On June 25, 2024, the Court held a Case Management Conference and set case deadlines. (Doc. Nos. 55, 56.) Notably, the court set July 3, 2024, as the deadline for Showman to file a motion

for leave to amend his First Amended Complaint. (Doc. No. 56, Page ID# 1451.) At Showman's request, the Court extended this deadline to July 8, 2024. (*See* Non-Document Order dated July 3, 2024.)

On July 8, 2024, Showman filed his Motion for Leave to File a Second Amended Complaint ("Showman's Motion"). (Doc. No. 58.) On July 12, 2024, Showman filed his Proposed Second Amended Complaint. (Doc. No. 60.) On July 26, 2024, Defendants filed an Opposition to Showman's Motion. (Doc. No. 61.) And on August 2, 2024, Showman filed a Reply in support of his Motion. (Doc. No. 62.)

**II.     Breach of Fiduciary Duty Allegations in Proposed Second Amended Complaint**

In his Proposed Second Amended Complaint, Showman sets forth the following allegations concerning his breach of fiduciary duty claim. (Doc. No. 60.)

Q Corp. is an Ohio LLC that is in and does business in Ohio. (*Id*. at ¶ 2.) Q Corp. is a wholly owned subsidiary of Q Holdco. (*Id*. at ¶ 3.) Q Holdco has no employees, operations, business, or holdings other than that of its holdings. (*Id*.) There is no functional difference between Q Corp. and Q Holdco other than this naming convention. (*Id*.) Q Corp. and Q Holdco are entirely intertwined in all business and financial aspects. (*Id*.)

Showman was employed as the Chief Financial Officer of Q Corp. from on or around May 18, 2020, through on or around August 5, 2022. (*Id*. at ¶ 18.) As part of Showman's duties, he was responsible for the financial performance and preparation of materials and reports related to the financial condition of Q Corp. (*Id*. at ¶ 19.)

There is no distinction between ownership of shares of Q Corp. and shares of Q Holdco. (*Id.* at ¶ 25.) All values of shares of Q Holdco are driven by the performance of its holdings. (*Id*.) Stock

and option grants for Q Corp. employees are in shares of Q Holdco. (*Id.*) In short, ownership interest of Q Corp. is done with Q Holdco shares, and owning Q Holdco shares means owning an interest of Q Corp. (*Id.*)

Showman made a cash investment into Q Corp. in or around April 2021, in exchange for shares of Q Corp. (*Id.* at ¶ 64.) Showman was granted stock options for shares of Q Corp. at the time of his hire, which were converted into stock shares of Q Corp. in or around April 2021. (*Id.* at ¶ 65.) Through the April 2021 transactions, Showman became a minority shareholder of Q Group, which Q Corp. defines in relevant documentation as "the Company and any company which is a subsidiary undertaking of the Company from time to time and, if applicable." (*Id.* at ¶ 66.) Thus, Showman is a minority shareholder of Q Corp., which includes both Q Holdco and Q Corp., its subsidiary. (*Id.*)

3i Corp. is the majority shareholder of Q Corp.; controls the Board of Directors of Q Corp.; controls the Q Group Employee Benefit Trust; and exerts majority control over Q Holdco and Q Corp. through its integrated business operations, ownership, and influence over Q Holdco's Board of Directors. (*Id.* at ¶¶ 67-70.) 3i Corp. compelled Q Corp. to transfer ownership of Showman's shares of Q Corp. back to Q Corp. at an artificially low share value. (*Id.* at ¶ 71.) 3i Corp. valued Showman's shares at an artificially low share value to maximize its income from its investment in Q Corp. at the expense of Showman. (*Id.* at ¶ 72.)

Q Corp.'s directors and officers, acting on behalf of Q Corp. and as agents and representatives thereof owed a fiduciary duty to Showman. (*Id.* at ¶ 73.) Defendants acted as fiduciaries with respect to Showman's shares, as Q Holdco had no employees, operations, business, or holdings other than that of its holdings such as Q Corp. (*Id.* at ¶ 74.) Defendants owed a fiduciary duty to Showman, as an employee and minority shareholder to not take actions that operate to the disadvantage of minority

5

shareholders including Showman. (*Id*. at ¶ 75.) Defendants owed a fiduciary duty to Showman to act in good faith in the pricing and transfer of ownership of Showman's shares of Q Corp. back to Q Corp. (*Id*. at ¶ 76.) Defendants owed a fiduciary duty to Showman to not engage in self-dealing by using an artificially low valuation to repurchase Showman's shares but using substantially higher valuations for purposes of investor relations, fundraising, and other business purposes. (*Id*. at ¶ 77.)

Defendants breached their fiduciary duties owed to Showman to deal in good faith, refrain from self-dealing, and not prejudice minority shareholders when they knowingly compelled transfer of Showman's shares at an artificially low share value. (*Id*. at ¶ 78.) Defendants used their control to deprive Showman, a minority shareholder, of the benefit of his investment. (*Id*. at ¶ 79.) Defendants' conduct described above operated to the disadvantage of Showman, a minority shareholder. (*Id*. at ¶ 80.) Defendants' conduct described above was not undertaken in good faith or for a legitimate business purpose. (*Id*. at ¶ 81.) Defendants' conduct described above was not taken with the care that an ordinarily prudent person in a like position would use in similar circumstances. (*Id*. at ¶ 82.) Defendants' conduct caused Showman to suffer an injury and sustain damages. (*Id*. at ¶¶ 90-91.) Showman is entitled to all available remedies. (*Id*. at ¶ 92.)

The Stock Buyback Agreement purportedly contains a forum selection clause. (*Id*. at ¶ 83.) The purported forum selection clause is inapplicable, unenforceable, unjust, and unreasonable. (*Id*. at ¶ 84.) It applies only to contractual claims. (*Id*. at ¶ 85.) It is inapplicable because Showman's breach of fiduciary duty claim does not require interpretation of the Stock Buyback Agreement. (*Id*. at ¶ 86.) It is inapplicable because Showman's breach of fiduciary duty claim does relate to the breach of, termination of, or validity of the Stock Buyback Agreement. (*Id*. at ¶ 87.) It was insufficient to put Showman on notice that Defendants sought to have Showman waive rights to a forum of his

choice. (*Id.* at ¶ 88.) Enforcement of the purported forum selection clause would be unjust and unreasonable because it would be extremely burdensome to secure the appearance of key witnesses in England. (*Id.* at ¶ 89.)

Showman attaches the following materials to his Proposed Second Amended Complaint (Doc. No. 60): (1) his "Second Declaration" dated March 11, 2024 (Doc. No. 60-1); (2) email correspondence (Doc. No. 60-2); (3) slides used for a board meeting (Doc. No. 60-3); and (4) an organizational chart. (Doc. No. 60-4.) The Second Declaration is sworn, and the emails, slides, and chart are all "Exhibits" to it. (Doc. Nos. 60-1 – 60-4.) Showman refers to his Second Declaration and its Exhibits in several paragraphs of his Proposed Second Amended Complaint. (Doc. No. 60, at ¶¶ 3, 18, 19, 25, 34, 35, 40, 45-53.)

### III. Standard of Review

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002). "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, a motion for leave to amend a pleading "may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

### IV.     Law and Analysis

In his Motion, Showman requests leave to amend his First Amended Complaint to include materials that this Court declined to consider in granting 3i Corp.'s Motion—his March 11, 2024 Second Declaration and the Exhibits thereto. (Doc. No. 58, PageID# 1459.) He also requests leave to amend his First Amended Complaint to include allegations that enforcement of the forum selection clause in the Stock Buyback Agreement would be unreasonable and unjust. (*Id*. at PageID# 1460.) He asserts that there is no undue delay, bad faith, dilatory motive, or undue prejudice. (*Id*.)

In Showman's Proposed Second Amended Complaint, he alleges that "Q [Corp.]'s directors and officers, acting on behalf of Q [Corp.] and as agents and representatives thereof owed a fiduciary duty to Plaintiff." (Doc. No. 60, at ¶ 73.) In addition, several of Showman's allegations are directed at Defendants, plural, and arguably then, against both Q Corp. and 3i Corp. (*Id*. at ¶¶ 74-82, 88, 90-91.) Indeed, that is how Defendants interpret Showman's Proposed Second Amended Complaint as well. (Doc. No. 61, PageID# 1558.) ("[A]lthough unclear, it appears Plaintiff is also attempting to revive his breach of fiduciary duty claim *against Q Corp*.")

Defendants oppose Showman's Motion on three grounds. (*Id*. at PageID# 1555-63.) First, Defendants argue that Showman's proposed amendment would be futile. (*Id*. at PageID# 1555.) Specifically, they contend that nothing in Showman's Proposed Second Amended Complaint would alter the Court's determination in its May 2024 Opinion that Showman did not plausibly plead that 3i Corp. owed him a fiduciary duty. (*Id*. at PageID# 1556.) They also contend that Showman's proposed breach of fiduciary duty claim against Q Corp. remains implausible. (*Id*. at PageID# 1558.) They further contend that Showman fails to offer any new facts sufficient to make a "strong showing" to set aside the forum selection clause in the Stock Buyback Agreement. (*Id*. at PageID# 1559.) Second,

Defendants argue that Showman seeks to renew his breach of fiduciary duty claim in bad faith. (*Id*. at PageID# 1561.) Third, Defendants argue that Showman's new allegations reference facts that he knew and documents that he possessed well before he filed his original complaint. (*Id*. at PageID# 1562.) In addition, they have expended considerable resources defending against Showman's prior complaints. (*Id*. at PageID# 1563.) Therefore, they contend, permitting Showman to further amend his complaint would unduly prejudice them. (*Id*.)

        **A.**     **Proposed Breach of Fiduciary Duty Claim against Q Corp.**

As an initial matter, the Court notes that, while Showman's Proposed Second Amended Complaint appears to assert breach of fiduciary duty claims against both Q Corp. and 3i Corp., Showman does not expressly request leave to assert a breach of fiduciary duty claim against Q Corp. in his Motion. (Doc. No. 58.) Rather, Showman's Motion only specifically references 3i Corp. and the Court's May 2024 Opinion. (*Id*. at PageID# 1458, 1459-60.)

Courts have held that "[a] party seeking leave to amend must file a motion stating its grounds for amending the complaint with particularity." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014) (citing *Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006)). Here, the Court finds that Showman failed to clearly seek leave in his Motion to reassert a breach of fiduciary duty claim against Q Corp. Accordingly, Showman's inclusion of Q Corp. in the breach of fiduciary duty claim in the Proposed Second Amended Complaint is improper, and his implied request to assert this claim against Q Corp. is denied.

Moreover, even assuming *arguendo* that Showman had properly moved to reassert a breach of fiduciary duty claim against Q Corp., Showman's request would be denied. Although not raised in Showman's Motion, Defendants nonetheless specifically address Showman's proposed claim

against Q Corp., arguing that the Proposed Second Amended Complaint fails to set forth sufficient allegations to reassert a plausible breach of fiduciary duty claim against Q Corp. (Doc. No. 61, PageID# 1558.) Showman does not acknowledge or address Defendants' argument regarding Q Corp. in his Reply. (Doc. No. 62, PageID# 1567.) Therefore, even if the Court considered Showman's Motion as an implied request to assert a claim against Q Corp., Showman has waived any potential counterarguments. *See McBride v. Performance Food Grp., Inc.*, 2023 U.S. Dist. LEXIS 19452 at *10 (E.D. Mich. Feb. 6, 2023) (finding that plaintiff "waived any potential arguments related to futility" by failing to reply in opposition).[1]

### B. Proposed Breach of Fiduciary Duty Claim against 3i Corp.

Since it is dispositive, the Court begins by addressing Defendants' argument that it would be futile to permit Showman to file a Second Amended Complaint to assert a breach of fiduciary duty claim against 3i Corp. *See Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (in analyzing a motion to amend under Rule 15, the Court may weigh the "futility of the proposed amendment"). The Sixth Circuit has held that a proposed amendment is futile if the complaint could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022). The Sixth Circuit has also determined that a proposed amendment was futile when it could not survive a renewed motion for judgment on the pleadings. *See Cicchini v. Blackwell*, 127 F. App'x 187, 191 (6th Cir. 2005). *See also White v. Allstate Ins. Co.*,

---

[1] Lastly, the Court notes that, even if the Court evaluated Showman's proposed breach of fiduciary duty claim against Q Corp., Showman's proposed amendment would be futile. In its January 2024 Opinion, the Court explained that "[t]he majority shareholder, not the corporation, bears the fiduciary obligations." *Steele v. Mara Enters.*, 2009 Ohio App. LEXIS 4808 at *15 (Ohio 10th Dist. Ct. App. Oct. 29, 2009). (Doc. No. 34, PageID# 877.) Showman's Proposed Second Amended Complaint alleges that 3i Corp. is "directly or indirectly the majority shareholder of Q [Corp.]" (Doc. No. 60, at ¶ 27.) In other words, Showman's allegations provide that Q Corp. is the corporate entity, not the majority shareholder. Therefore, Showman cannot overcome the foregoing statement of law in *Steele*.

2023 U.S. Dist. LEXIS 13711 at *17 (N.D. Ohio Jan. 26, 2023) ("[A]mendment is considered to be futile if the proposed amended complaint would not survive a motion to dismiss or a motion for judgment on the pleadings.")  Even though there is not currently a motion for judgment on the pleadings pending before the Court, the Court will nonetheless undertake a Rule 12(c) analysis for purposes of evaluating whether Showman's proposed breach of fiduciary duty claim against 3i Corp. would be futile under Rule 15(a).

        1.        **Rule 12(c) Standard**

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'"  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  Under Rule 12(b)(6), the Court accepts Showman's factual allegations as true and construes his Proposed Second Amended Complaint in the light most favorable to him.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a

'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.

### 2. Scope of Pleadings

Before conducting a Rule 12(c) analysis, the Court must determine what matters it may properly consider.  Federal Rule of Civil Procedure 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), **matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56**. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (emphasis added). Federal Rule of Civil Procedure 7(a) defines a pleading to include both "a complaint" and "an answer to a complaint." Fed. R. Civ. P. 7(a)(1) & (2). And, under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). District courts have defined a written instrument as "'a document evidencing legal rights or duties giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.'" *Reguli v. Russ*, 2023 U.S. Dist. LEXIS 167257 at *13 (M.D. Tenn. Aug. 22, 2023) (quoting *Benzon v. Stanley*, 2004 U.S. Dist. LEXIS 2669 at *6 (M.D. Tenn. Jan. 8, 2004)). In addition to matters inside the pleadings, Sixth Circuit case law provides that a court may also consider documents that "[are] referred to in the [plaintiff's] complaint and [are] central to the plaintiff's claim" without converting the Rule 12(c) motion to one for summary judgment. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999). For instance, in *Greenberg*, the Sixth Circuit held that insurance policies were "central" to the plaintiffs' claims because "[e]ach of [the plaintiffs'] six causes of action relates to and arises from the two life insurance policies in question." *Id*.

In its May 2024 Opinion, the Court found that it could properly review the documents attached to 3i Corp.'s Answer because they were exhibits to a pleading and were legal documents that met the above definition of "written instrument." (Doc. No. 48, PageID# 1407-08.) However, the Court determined that it could not properly review the documents Showman attached to his Opposition because they were not exhibits to his First Amended Complaint or 3i Corp.'s Answer and because Showman did not refer to them in his First Amended Complaint. (*Id*. at PageID# 1407.)

13

In an apparent effort to overcome this obstacle, Showman attaches the same documents to his Proposed Second Amended Complaint—his March 11, 2024 Second Declaration (Doc. No. 60-1), as well as emails, slides, and an organizational chart attached as Exhibits thereto. (Doc. Nos. 60-1 – 60-4.) Showman's Second Declaration constitutes an "exhibit to a pleading" under Fed. R. Civ. P. 10(c). However, there is a split among the circuits as to whether an affidavit constitutes a "written instrument" for purposes of Rule 10(c). *See In re Empyrean Biosciences, Inc. Securities Litigation*, 219 F.R.D. 408, 410-12 (N.D. Ohio 2003) (discussing cases). The Sixth Circuit has not specifically addressed the issue. In *Song v. City of Elyria*, 985 F.2d 840 (6th Cir. 1993), plaintiffs argued that the district court erred in considering plaintiffs' own affidavits, which were attached to the complaint, when ruling on defendants' motion to dismiss. *Id*. at 842. The Sixth Circuit held that the affidavits "were not outside the pleading" because they "did nothing more than verify the complaint. They added nothing new, but, in effect, reiterated the contents of the complaint itself." *Id*. at 842.

By contrast, in *Devault v. Wal-Mart, Inc.*, 2020 U.S. Dist. LEXIS 71462 (N.D. Ohio Apr. 23, 2020), the court found that plaintiff's unauthenticated exhibit containing "24 pages" and "46 paragraphs" was akin to "'witness affidavit[s] and other exhibits containing largely evidentiary material typically [that] do not fall within Rule 10(c)'s category of "written instruments."'" *Id.* at *5 (quoting *Montgomery v. Buege*, 2009 U.S. Dist. LEXIS 32918 at *10 (E.D. Cal. Apr. 16, 2009)). Similarly, in *Empyrean Biosciences*, the court found that a 16-page affidavit from plaintiff's counsel containing 29 substantive paragraphs and incorporating 18 exhibits was not a written instrument as contemplated by Rule 10(c) where the complaint was "otherwise lacking in substantive allegations." *Empyrean Biosciences*, 219 F.R.D. at 413.

Showman's Second Declaration is sworn and contains 14 paragraphs. (Doc. No. 60-1.) In addition, each of its substantive paragraphs are also set forth in Showman's Proposed Second Amended Complaint. (Doc. No. 60, at ¶¶ 18, 19, 25, 34, 35, 40, 45-53). Therefore, Showman's Second Declaration does nothing more than verify his Proposed Second Amended Complaint. *See Song*, 985 F.2d at 842. Accordingly, the Court can and will consider Showman's Second Declaration in conducting a Rule 12(c) analysis.

However, the Court reaches a different conclusion regarding the emails, slides, and organizational chart attached as exhibits to Showman's Second Declaration. (Doc. Nos. 60-2 – 60-4.) The Court finds that these materials are not on par with a "'deed, will, bond, lease, insurance policy or security agreement,'" *Reguli*, 2023 U.S. Dist. LEXIS at *13 (quoting *Benzon*, 2004 U.S. Dist. LEXIS at *6), nor are they equivalent to the legal documents 3i Corp. attached to its Motion. These materials are also not "central" to Showman's proposed breach of fiduciary duty claim against 3i Corp. *Greenberg*, 177 F.3d at 514. Unlike the insurance policies in *Greenberg*, Showman's claim does not "relate[] to and arise[] from" his Second Declaration and its Exhibits. *Id*. At best, these materials constitute extraneous or evidentiary material that should not be attached to the pleadings. *See Empyrean Biosciences*, 219 F.R.D. at 413. Accordingly, the Court may not properly consider the three Exhibits to Showman's Second Declaration in conducting a Rule 12(c) analysis.

### 3. Analysis

To prevail on a breach of fiduciary duty claim under Ohio law, Showman "must demonstrate: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach." *Wells Fargo Bank, N.A. v. Sessley*, 935 N.E.2d 70, 83 (Ohio 10th Dist. Ct. App. 2010). To meet the first element, Showman must plead facts that 3i Corp. was a majority shareholder in Q

Holdco and thus owed a fiduciary duty to the company's minority shareholders. *See Crosby v. Beam*, 548 N.E.2d 217, 221 (Ohio 1989). Defendants argue that Showman's proposed amendment would be futile because "none of [his] new allegations can refute this Court's prior determinations that 3i Corp. is *not* a shareholder of Q Holdco and, therefore, *could not* owe [Showman] a fiduciary duty as a matter of law." (Doc. No. 61 at PageID# 1557.) Showman counters that his proposed claim is not futile because "the [Proposed] Second Amended Complaint and the accompanying declaration and exhibits set forth facts demonstrating that 3i Corp. is a majority shareholder of Q [Corp.] and does in fact exert control over Q [Corp.]" (Doc. No. 62, PageID# 1567.) "For example," he contends, "the amended complaint alleges that 3i Corp. invested in Q [Corp.] and owned over 85% of the economic results of Q [Corp.]" (*Id.*)

In its May 2024 Opinion, the Court explained that "if one of 3i Corp.'s documents 'contradicts the allegations [in Showman's Amended Complaint], the[n] the document trumps the allegations.' *Waid v. Earley* (*In re Flint Water Cases*), 960 F.3d 303, 329 (6th Cir. 2020). A document contradicts an allegation if it 'utterly discredit[s]' it. *Id.* (quoting *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020))." (Doc. No. 48, PageID# 1408.) The Court determined that the documents 3i Corp. attached to its Answer utterly discredited Showman's allegations in his First Amended Complaint because they showed 3i Corp. was not a shareholder in Q Holdco, much less a majority shareholder. (*Id.* at PageID# 1410; Doc. No. 35-11, PageID# 1000, 1046-48.)

As explained above, the Court's analysis is limited to the allegations in Showman's Proposed Second Amended Complaint (some of which his Second Declaration verifies). Showman alleges that Q Corp. "is a wholly owned subsidiary of Q Holdco" and that "[t]here is no distinction between ownership of shares of Q Corp. and shares of Q Holdco." (Doc. No. 60, at ¶¶ 3, 25.) However, as a

matter of law, none of Showman's proposed allegations can overcome 3i Corp.'s documents demonstrating that 3i Corp. was not the majority shareholder of Q Holdco. *See In re Flint Water Cases,* 960 F.3d at 329.[2] For this reason, Showman's proposed breach of fiduciary duty claim against 3i Corp. would meet the same fate as his prior claim—it would not survive a motion for judgment on the pleadings. *See Cicchini*, 127 F. App'x at 191. Accordingly, Showman's proposed amendment would be futile. *See id.*

Since the Court's conclusion regarding futility is dispositive of Showman's Motion, the parties' remaining arguments are moot. Accordingly, the Court need not (and will not) address the parties' arguments regarding the forum selection clause in the Stock Buyback Agreement. Nor will the Court address the parties' arguments regarding the issues of bad faith, failure to cure repeated pleading deficiencies, or undue prejudice.

## V. Conclusion

For the foregoing reasons, the Court DENIES Showman's Motion for Leave to File a Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: September 27, 2024

    *s/ Pamela A. Barker*
PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE

---

[2] Even if the Court could properly consider the Exhibits to Showman's Second Declaration under Rule 12(c), none of them support his assertion that 3i Corp. was the majority shareholder of Q Corp. For instance, as Defendants accurately note in their Opposition, neither 3i Corp. nor Q Corp. appear anywhere on the organizational chart. (Doc. No. 61, PageID# 1557, at n. 3; Doc. No. 60-4.)